**No. 25-10297**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

LAWRENCE MEADOWS,
*Plaintiff/Appellant,*

v.

AMERICAN AIRLINES, INC.,
*Defendant/Appellee.*

---

Appeal from the United States District Court
for the Southern District of Florida
Hon. Darrin P. Gayles
No. 1:24-cv-20518-DPG

---

**AMERICAN AIRLINES, INC.'S OPPOSITION TO APPELLANT'S
MOTION FOR SANCTIONS**

---

Mark W. Robertson
O'Melveny & Myers LLP
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
(212) 326-2000

Kelly S. Wood
O'Melveny & Myers LLP
610 Newport Center Drive
17th Floor
Newport Beach, CA 92660
(949) 823-6900

Jason Zarrow
O'Melveny & Myers LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
(213) 430-6000

Ryan K. Stumphauzer
Timothy A. Kolaya
Matthew M. DellaBetta
Stumphauzer Kolaya
Nadler & Sloman, PLLC
Two South Biscayne Blvd., Suite 1600
Miami, FL 33131
(305) 614-1400

*Counsel for Appellee American Airlines, Inc.*

**INTRODUCTION**

Plaintiff-Appellant Lawrence Meadows's motion for sanctions is frivolous. Meadows does not contend that American misstated any facts or law in its briefing before this Court. Rather, the sole basis for Meadows's sanctions motion is an allegedly inaccurate factual recital in a paragraph of a Settlement Agreement that American entered with his union and submitted to this Court in an unopposed motion to supplement the record. Specifically, Meadows claims the Settlement Agreement's recital that his union closed grievance No. 12-011 in 2013 is false. As detailed below, that statement is true—as Meadows himself acknowledged—and is entirely irrelevant to American's arguments in this appeal in any event.

In 2011, American terminated Meadows's employment. As is evident from the parties' merits briefing, Meadows then began a litigation crusade in courts around the country to get his job back. In this suit, Meadows claims that American violated the Americans with Disabilities Act when it refused to accede to his demand for reinstatement beginning in 2018. According to Meadows, American acted with discriminatory and retaliatory intent, which he claims is shown by the fact that American offered reinstatement to other, allegedly similarly-situated pilots. *See, e.g.*, ECF No. 67 ¶¶ 108-09; *see also* Doc. 22 at 39, 41, 48 n.10.[1]

---

[1] Citations to "Doc." refer to entries on this Court's docket. Citations to "ECF No." refer to entries on the district court's docket.

1

As set out in American's merits brief, Meadows's claims fail because he did not allege that any other pilot was similarly situated to him. *See* Doc. 28 at 37-39. In support of that argument, American explained that several other American pilots were offered a potential path to reinstatement pursuant to a 2025 Settlement Agreement with his former union, the Allied Pilots Association ("APA"), because those pilots did not receive notice that APA alleged they were entitled to under the governing collective bargaining agreement ("CBA"), whereas Meadows did receive notice in advance of his termination in 2011. *See id*.; *see also* Doc. 30, Ex. A ¶¶ 2-3. Thus, American argued, the Settlement Agreement is confirmation that "American treated Meadows differently than those comparator pilots, not because of any protected activity, but because of his rights under the pilot CBA." Doc. 28 at 38.

Because the Settlement Agreement was executed after the district court dismissed Meadows's claims, it was not part of the record on appeal. American filed a motion to supplement the record on appeal to include the Settlement Agreement. *See* Doc. 30. Meadows did not oppose American's motion, *see id.* at 1, which, on March 16, 2026, this Court granted, *see* Doc. 40.

Having acquiesced to American's motion to supplement the record, Meadows now claims American committed a "fraud on the court" because a factual recital in the Settlement Agreement—which American does not rely on or even reference in

2

its merits brief—is, in Meadows's view, inaccurate.  Doc. 48 at 4-5.

After the "Now, Therefore" clause, paragraph 2 of the Settlement Agreement states that Meadows was "not eligible for reinstatement under this Agreement" because Meadows (unlike the other pilots covered by the Agreement, *see* Doc. 30, Ex. A ¶ 3) received notice "in advance of his removal from the seniority list and separation from employment in 2011 … ."  *Id.* ¶ 2.  As further confirmation that Meadows actually received the notice of his termination, the Settlement Agreement then notes that Meadows filed two grievances—Nos. 12-011 and 13-064— "challenging the Company's decision to separate him from employment at the time." *Id*.  The next sentence then merely recites the history of those grievances:  "Both grievance 12-011 and 13-064 were subsequently disposed of and closed after the APA declined to advance them [to arbitration] in 2013 and 2014, respectively." *Id*. (emphasis added).

The basis for Meadows's sanctions motion is his claim that the underlined factual recital—which, again, is irrelevant to American's arguments on appeal—is inaccurate.  According to Meadows, grievance No. 12-011 was not in fact closed in 2013.  *See* Doc. 48 at 2.

Meadows's motion is baseless.   Indeed, in correspondence with APA, Meadows himself stated that "I understand that 12-011 is closed" after APA specifically told him it was closed and that it would not be taking any further action

on it.  *See* Decl. of Joshua B. Shiffrin at DX20, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 1, 2026), ECF No. 238-3.[2]  That is, after all, why Meadows sued APA in 2014 in the District of Utah, alleging APA breached its duty of fair representation by "refus[ing] to arbitrate" grievance 12-011.  Compl. ¶ 8, *Meadows v. Allied Pilots Ass'n*, 2:14-cv-00115-DS (D. Utah Feb. 19, 2014), ECF No. 1.  Meadows's assertion that American's bankruptcy proceedings show otherwise seriously misrepresents the record.

Meadows's reliance on the declaration of former union president, Edward Sicher, is also misplaced.  Sicher stated that, in 2024, he directed the union to process Meadows's grievance.  At most, that would show Sicher re-opened the grievance in 2024.  But Sicher was later replaced, and APA's new president did not prosecute Meadows's grievance.  Instead, he reverted to the *status quo ante*—namely, that Meadows's grievance was and is closed.  Thus, even if Sicher's declaration were credited, it would show only that Meadows's grievance may have been re-opened in 2024, not that it was open when the Settlement Agreement was reached in 2025 nor in 2013, as the Settlement Agreement states.

To obtain sanctions, Meadows is required to show that American acted in bad

---

[2] APA attached this email as an exhibit in support of its summary judgment motion recently filed in pending litigation brought by Meadows against APA in the Southern District of Florida.  American has attached a copy of this email to its brief for the Court's convenience as Exhibit 1.

faith.  But the only party possibly acting in bad faith here is Meadows.  If Meadows had genuine concerns with this Court considering the 2025 Settlement Agreement, he should have raised them in opposition to American's motion to supplement the record.  Instead, he has attempted to use the Settlement Agreement to his tactical advantage, making a mountain out of far less than a molehill.

For these reasons, and as detailed below, this Court should summarily deny Meadows's motion.

## BACKGROUND

The following background regarding Meadows's history litigating his termination from American is necessary to understand the instant motion.

1.   In 2012, Meadows filed grievance No. 12-011 challenging his 2011 termination.   After initial proceedings under the CBA's grievance process, Meadows's union, APA, declined to pursue the grievance further.   In correspondence with Meadows, APA thus explained that grievance No. 12-011 "has been closed."  *See* Decl. of Joshua B. Shiffrin at DX20, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 1, 2026), ECF No. 238-3.  In response, and contrary to the entire premise of Meadows's sanctions motion, Meadows stated:  "I understand that 12-011 is closed, but I still have legal remedies that flow from it." *Id*.

2.   In 2014, Meadows sued APA in the District of Utah alleging that APA

breached its duty of fair representation by "refus[ing] to arbitrate his company termination grievance claim before a System Board of Adjustment," Compl. ¶ 8, *Meadows v. Allied Pilots Ass'n*, 2:14-cv-00115-DS (D. Utah Feb. 19, 2014), ECF No. 1, a specialized arbitral body for adjudicating airline grievances under the Railway Labor Act, *see generally* Doc. 28 at Part II.B (discussing RLA preemption). As American explained in its merits brief—and as Meadows does not dispute—the District of Utah "dismissed his complaint and the Tenth Circuit affirmed." Doc. 28 at 12 (citing decisions); *see also In re AMR Corp.*, 2023 WL 2770228, at *1 n.1 (2d Cir. Apr. 4, 2023).

3. Also in 2012, the APA filed a grievance (No. 12-012) alleging, among other things, that American failed to provide notice to pilots on extended medical leave before terminating them. *See* Doc. 28 at 12-13. That is the grievance that APA and American settled in 2025 in the Settlement Agreement filed with this Court as a supplement to the record. *See* Doc. 30, Ex. A.

A factual recital in that Settlement Agreement forms the basis for Meadows's sanctions motion. In the Settlement Agreement, American and APA agreed to provide a path for reinstatement for pilots who did not receive pre-termination notice. *See* Doc. 30, Ex. A ¶ 3. But the Settlement Agreement did not provide Meadows a path for reinstatement because he had received notice, as confirmed by the fact that Meadows filed grievance No. 12-011, as well as another grievance (No.

13-064), challenging his termination. *See id.* ¶ 2. The Settlement Agreement then recited what happened to those grievances: They were "disposed of and closed after the APA declined to advance them in 2013 and 2014 [to the system board arbitration], respectively." *Id*.

4. Notwithstanding Meadows's own admission that "12-011 is closed," and his unsuccessful litigation in Utah to compel his union to re-open and process that grievance to system board arbitration, Meadows claims that American committed sanctionable misconduct by submitting the 2025 Settlement Agreement to this Court because it recites that APA closed grievance 12-011 in 2013. The primary basis for Meadows's motion is his assertion that statements in American's bankruptcy proceedings show that the grievance was still open. Those statements, however, do nothing more than confirm that Meadows was entitled to pursue litigation to compel APA to move grievance No. 12-011 to arbitration—they have nothing to do with whether the grievance was open or closed, which merely refers to whether APA intended to take further action on the grievance.

In 2011, American filed for bankruptcy in the Southern District of New York. *See* Voluntary Pet., *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Nov. 29, 2011), ECF No. 1. The matter was assigned to Judge Sean H. Lane. *See* Minute Order, 1:11-bk-15463 (Bankr. S.D.N.Y. Nov. 29, 2011). Meadows was an active participant in the bankruptcy, asserting several proofs of claim against American.

*See, e.g.*, Modified Bench Ruling at 21:21-22:16, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Oct. 9, 2014), ECF No. 12288.

American objected to most of Meadows's asserted proofs of claim in March 2014, on the grounds that (i) they were untimely and (ii) American had already prevailed on one of them. *See* Modified Bench Ruling at 15:10-21, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Oct. 9, 2014), ECF No. 12288. But American did not object to Meadows's continued pursuit of grievance No. 12-011, which was then being litigated in the District of Utah. American agreed that grievance No. 12-011 was on "its own separate track and nothing in [American's] objection would change that." Transcript of Proceeding at 37:11-12, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Apr. 21, 2014), ECF No. 12012. In September 2014, Judge Lane issued an order sustaining American's objection. *See* Doc. 48, Ex. B at 2.

Because American did not object to grievance No. 12-011, Judge Lane excluded it from his order: "ORDERED that, notwithstanding the foregoing, Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the extent … *permitted by applicable law*." *Id.* (emphasis in original). Judge Lane held that Meadows retained "whatever rights in the grievance process he should have by virtue of Grievance 12-011 … ." Modified Bench Ruling at 31:8-9, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Oct. 9, 2014), ECF No. 12288.

In September 2021, American and APA reached an agreement to settle a

8

different set of grievances.  *See* Notice of Presentment of Stipulation ¶¶ 2-3, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Sept. 17, 2021), ECF No. 13364. They asked Judge Lane to approve a stipulation allowing them to enter into the settlement.  *See id.* at 5.  Grievance No. 12-011 was not part of the settlement, so American and APA included a generic statement that their stipulation "does not affect" grievance No. 12-011, "and the parties retain their respective legal positions on the validity and status of th[at] grievance[.]" *Id.* ¶ 3.  American and APA added this provision, even though APA had declined to pursue the grievance (i.e., closed the grievance), because Meadows was a frequent objector in American's bankruptcy proceedings.   Unsurprisingly, Meadows objected, *see* Creditor Lawrence M. Meadows' Objection to Notice of Presentment of Stipulation, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Oct. 1, 2021), ECF No. 13371, and Judge Lane made clear on the record that the stipulation did not affect whatever rights Meadows thought he had in the grievance, *see* Transcript of Proceedings at 22:15-16, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Nov. 9, 2021), ECF No. 13400 (refusing to insert "language [that may] be misconstrued … as gloss on what's happening" with "the actual grievance").

In May 2022, the Southern District of New York rejected Meadows's appeal of the bankruptcy court's approval of a settlement between American and the Equal Employment Opportunity Commission.  *See In re AMR Corp.*, 2022 WL 1556398,

at *1 (S.D.N.Y. May 16, 2022).  In the course of ruling against Meadows, the Southern District of New York noted that "[a]lthough the APA settled its proof of claim, there is some ambiguity in the record as to the status of Meadows' grievance following that settlement."  *Id.*  The Southern District of New York then quoted Judge Lane's ruling on American's objection to Meadows's proofs of claim, which in turn quoted American's counsel as stating in 2014 that: "Counsel for AMR confirmed that the process of fully litigating Grievance 12-011, including [a pending lawsuit to compel arbitration], is unaffected by the debtors' objection ... [and] is on a separate track."  *Id.* at *1 (quotations omitted) (brackets and ellipses in original). This observation was "background," *id*. (capitalization omitted), as the Southern District of New York's ruling had nothing to do with that grievance.

5.  Captain Edward F. Sicher was elected as APA's President in 2022.  *See* Doc. 48, Ex. D ¶ 4.  Sicher states in a declaration that in June 2024 he "directed [APA's lawyer] … to move FO Meadows' individual Grievance 12-011 forward … ."  *Id.* ¶ 27.  Sicher admits that after he was removed from office in 2024, the current APA President (Nick Silva) took the position that grievance No. 12-011 was closed since 2013, as stated in the Settlement Agreement.  *See id.* ¶ 30.

## ARGUMENT

Meadows accuses American and its counsel of committing a "fraud on this Court" by supplementing the record with a Settlement Agreement that states

10

grievance No. 12-011 was closed in 2013.  Doc. 48 at 1.  Meadows's motion is nonsense.  As Meadows himself admitted in January 2014, his grievance *was* "closed" because his union had decided not to pursue it, although that did not foreclose him from bringing claims—like his District of Utah lawsuit—related to APA's decision.  Meadows's contrary argument rests mainly on a mischaracterization of statements in American's bankruptcy proceedings, which only confirm Meadows remained free to pursue those legal remedies, but do not address whether the grievance was open or closed.  Meadows offers no non-frivolous argument for how American's unopposed submission of a Settlement Agreement could rise to the level of sanctionable misconduct.

## I. THE SETTLEMENT RECITAL IS FACTUALLY ACCURATE

Meadows misrepresents the record in arguing that the 2025 Settlement Agreement inaccurately recites that grievance No. 12-011 was closed in 2013.

**A. "The 2014 Order."**  Meadows first asserts that grievance No. 12-011 must have been open in September 2014 because Judge Lane "issued an order stating that [Meadows] 'shall be permitted to arbitrate Grievance 12-011.'" Doc. 48 ¶ 4 (quoting *id.* Ex. B).  Meadows disingenuously omits the rest of Judge Lane's order, which states: "Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the extent … *permitted by applicable law*." *Id.*, Ex. B (emphasis in original).  In other words, Judge Lane authorized Meadows to continue to pursue his

litigation in Utah seeking to compel APA to take grievance No. 12-011 to arbitration, which Meadows would not have pursued if the grievance was open.

The context surrounding Judge Lane's order further confirms this. American objected to Meadows's assertion of various claims in its bankruptcy, but not to grievance No. 12-011. *See supra* at 8. As to grievance No. 12-011, American informed the court of Meadows's "pending suit to compel arbitration," and agreed the "process of fully litigating the grievance" was unaffected by its objection. Transcript of Proceeding at 36:17-18, 37:3-4, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Apr. 21, 2014), ECF No. 12012. Judge Lane's order reflects nothing more. Although Meadows's grievance was closed by APA in 2013 when it declined to take the grievance to arbitration, Meadows was permitted by Judge Lane to pursue whatever legal remedies he might have, notwithstanding American's objection to his other claims—which Meadows did pursue before the District of Utah and Tenth Circuit, which both ruled against him. *See supra* at 6.

**B.  "The 2021 Order."** Meadows next cites (at ¶ 5) a November 2021 order from Judge Lane approving a stipulation, which stated: "The Stipulation does not affect Grievance No. 12-011 (02/04/12 Meadows, Lawrence) … and the parties retain their respective legal positions on the validity and status of those grievances." Doc. 48, Ex. C. That stipulation and order likewise does not contradict the fact that APA closed grievance No. 12-011 in 2013. As mentioned above, *see supra* at 8-9,

the quoted language from the stipulation merely reflected that it left grievance No. 12-011 untouched—i.e., that "the parties retain their respective legal positions on the validity and status" of Meadows's grievance.

C. **"The 2022 Admission."**  Meadows again misrepresents the record in suggesting that American "confirmed on the record" "in a 2022 proceeding" that Meadows's grievance was still being litigated.  Doc. 48 ¶ 6.  The statement Meadows cites as a "2022" admission was actually *from 2014*.  In 2014, American's counsel stated that American's objection to Meadows's proofs of claim did not extend to his pending litigation in the District of Utah to compel APA to process Meadows's grievance.  *See supra* at 8.  As background, the 2022 order cited by Meadows quoted that 2014 statement:  "Counsel for AMR confirmed that the process of fully litigating Grievance 12-011, including [a pending lawsuit to compel arbitration], is unaffected by the debtors' objection ... [and] is on a separate track."  *In re AMR Corp.*, 2022 WL 1556398, at *1 (bracketed language and ellipses in original); *see also supra* at 6 (discussing District of Utah litigation).

D. **"The 2024 Corroboration."**  Finally, Meadows relies (at ¶ 7) on Sicher's declaration claiming grievance No. 12-011 was "in the queue for an arbitration hearing" at the time he left office in 2024.  Doc. 48, Ex. D ¶ 27.  Although APA's then-President Sicher may have directed that the closed grievance be re-opened and placed in the queue for arbitration, that does nothing to change the fact that APA's

13

position both in 2013 and at the time it entered the Settlement Agreement in January 2025 was that grievance No. 12-011 was closed in 2013, *see* Doc. 48, Ex. D ¶ 30; *see also* Decl. of Joshua B. Shiffrin at DX20, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 1, 2026), ECF No. 238-3; Transcript of Proceeding at 70:22-71:2, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Apr. 21, 2014), ECF No. 12012 (APA's attorney telling bankruptcy court that "the APA decided, and in August of 2013 when it decided, informed Mr. Meadows that it would not be taking this grievance to arbitration. … At that point the process ended").

## II.    MEADOWS'S MOTION IS FRIVOLOUS

Meadows argues American should be sanctioned under Civil Rule 11(b)(3), 28 U.S.C. § 1927, and the Court's inherent authority.  But he presents no non-frivolous argument in support—in fact, he presents no developed argument at all. As explained above, the Settlement Agreement's factual recital is completely accurate.  Even assuming for the sake of argument that grievance No. 12-011 was not closed in 2013, Meadows has not come close to demonstrating sanctionable misconduct.

### A.    American Plainly Did Not Violate Rule 11(b)(3)

Rule 11(b)(3) provides that by presenting "a pleading, written motion, or other paper," an attorney certifies that "the factual contentions" in that filing "have

14

evidentiary support." Fed. R. Civ. P. 11(b)(3).[3]  As the Rule's text makes plain, it prohibits lawyers from making unsupported "factual contentions" in court filings— i.e., assertions by a lawyer to the court that a certain fact is true.  Here, American made no "factual contentions" about the closure of Meadows's grievance in any of its filings because that fact is irrelevant to American's arguments on appeal.  Thus, American did not mention the closure of Meadows's grievance in its merits brief. *See* Doc. 28.[4]

Contrary to Meadows's argument, Rule 11(b)(3), by its terms, does not apply to the factual content of evidence offered to a court.  Obviously, attorneys should not knowingly present false evidence.  But that concern is addressed by other rules and statutes, not Rule 11(b)(3).

Even if Rule 11(b)(3) applied, under Rule 11, "[a] factual claim is frivolous when it has no reasonable factual basis." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022).  Rule 11(b)(3) is violated only "when the attorney exhibits 'a deliberate indifference to obvious facts.'" *Id.* (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).  Here, American clearly did not exhibit a deliberate

---

[3] Rule 11 does not by its own terms apply to appeals. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406 (1990).  Meadows asserts it applies here by virtue of Federal Rule of Appellate Procedure 46.  *See* Doc. 48 at 4.

[4] American mentioned the history of the grievance culminating in the Utah litigation in the background section of its brief, *see* Doc. 28 at 12, which Meadows does not allege is inaccurate.

15

indifference to obvious facts. Meadows's union agrees with American that the grievance was closed as of 2013. Meadows himself admitted the same. And Meadows unsuccessfully attempted to force his union to process his grievance in litigation in Utah, which he would not have done if the grievance remained open. Even if there were some merit to Meadows's position that the grievance was open, *but see* Part I, there is absolutely no merit to Meadows's position that American should be sanctioned for submitting evidence stating otherwise.

### B.    American Plainly Did Not Violate Section 1927

"For a court to justify an award of sanctions under § 1927, three conditions must be satisfied: (1) the attorney must engage in unreasonable and vexatious conduct, (2) that conduct must have multiplied the proceedings, and (3) the amount of sanctions must bear a financial nexus to the excess proceedings." *Barnhart v. Lamar Advertising Co.*, 523 F. App'x 635, 638 (11th Cir. 2013) (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). None of these elements is satisfied here.

*First*, Meadows has identified no conduct by American even remotely approaching "objective bad faith." *Nat'l Christmas Prods., Inc. v. OJ Commerce, LLC*, 2026 WL 773192, at *4 (11th Cir. Mar. 19, 2026); *see also Barnhart*, 523 F. App'x at 638. As explained above, the Settlement Agreement's recitation that Meadows's grievance was closed by APA *is true*. At absolute most that point is

contested, and submitting evidence that recites a contested fact is not sanctionable misconduct, particularly when the fact is immaterial, as here.

*Second*, American's submission of the Settlement Agreement did not multiply proceedings. A filing multiplies proceedings when it "results in proceedings that would not have been conducted otherwise." *Peterson*, 124 F.3d at 1396; *see also Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, 2025 WL 2887300, at *6 (11th Cir. Oct. 10, 2025) (same). Here, Meadows did not oppose American's motion to supplement the record, so he was not obligated to file any additional briefs.

The only additional litigation generated by the Settlement Agreement is Meadows's motion for sanctions. But it is Meadows, not American, who multiplied proceedings in this respect. It is objectively unreasonable for a litigant to acquiesce to the submission of evidence and then turn around and argue that submitting the evidence is a basis for sanctions. If Meadows genuinely believed that the Settlement Agreement contained an inaccurate factual recital, his proper recourse was to oppose American's motion to supplement the record, not to lie in wait and move for sanctions once American's motion was granted. *Cf. Hyde v. Irish*, 962 F.3d 1306, 1311 (11th Cir. 2020) ("If Irish were right that the falsity of the allegations was so obvious from the face of the complaint, then he should have raised that concern when the complaint was first filed (or at least closer in time to that point).").

*Third*, sanctions under Section 1927 are limited to "the excess costs, expenses,

17

and attorneys' fees reasonably incurred" because of the offending filing.  28 U.S.C. § 1927.  Meadows does not argue he incurred any excess costs.  Nor could he, as he filed no brief in opposition to American's motion to supplement the record.

For all these reasons, Meadows's accusation of "false pretext," Doc. 48 at 4, rings hollow.  American could not have acted pretextually by submitting a settlement agreement with an allegedly false factual recital, when that factual recital is immaterial to its arguments on appeal.

Meadows, by contrast, seeks to use the Settlement Agreement to his tactical advantage.  Although legally irrelevant both to American's arguments on appeal and the reason for Meadows's exclusion from the Settlement Agreement, Meadows has made the Settlement Agreement's recital that his grievance was closed in 2013 the centerpiece of his reply brief on the merits.  *See, e.g.*, Doc. 44 at 1-5, 7-9, 12.[5]  And he has sought to use his filings in this case to his advantage in a separate pending lawsuit against APA.  There, he has argued that the Southern District of Florida should defer ruling on APA's summary judgment motion because the Settlement

---

[5] Meadows claims in his reply brief that the Settlement Agreement is a "new and discrete act of discrimination and retaliation."  Doc. 44 at 8 (emphasis removed). Meadows does not challenge the Settlement Agreement in his Amended Complaint here, *see* ECF No. 67, but he recently filed yet another lawsuit against American and APA (and others) asserting multiple claims based on the Settlement Agreement in the Eastern District of New York.  *See* Compl., *Meadows v. Am. Airlines, Inc.*, 2:26-cv-00679-EK-ARL (E.D.N.Y. Feb. 6, 2026), ECF No. 1.

Agreement "is currently the subject of a fraud-on-the-court investigation in the U.S. Court of Appeals for the Eleventh Circuit." Pl.'s Opp. to Def.'s Mot. for Summary Judgment and Mot. for Relief Under Fed. R. Civ. P. 56(d) at 1, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 15, 2026), ECF No. 249. Meadows even filed a supplemental authority notice, submitting his reply brief and sanctions motion from this case, in which he argued the Southern District of Florida should defer ruling on summary judgment because, he claims, this Court "is now actively seized with determining whether the January 15, 2025 settlement agreement is the product of a fraud on the court." Pl.'s Notice of Filing Supp. Auth. at 2, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 22, 2026), ECF No. 255.

## C.    American Plainly Did Not Commit A Fraud On The Court

Finally, Meadows asks this Court to invoke its inherent authority to sanction American for committing a fraud on the court. As explained throughout, there is no fraud. And the only party potentially acting in "bad faith," as required for an inherent-authority sanction, *Hyde*, 962 F.3d at 1310, is Meadows.

## CONCLUSION

For these reasons, Meadows's motion should be denied.

Dated: April 27, 2026                                Respectfully submitted,

**STUMPHAUZER KOLAYA**                **O'MELVENY & MYERS LLP**
**NADLER & SLOMAN, PLLC**
                                                     By: */s/ Mark W. Robertson*
Ryan K. Stumphauzer, Esq.                            Mark W. Robertson

19

Fla. Bar No. 12176
Email: rstumphauzer@sknlaw.com
Timothy A. Kolaya
Fla. Bar No. 056140
Email: tkolaya@sknlaw.com
Matthew M. DellaBetta
Fla. Bar No. 1031216
Email: mdellabetta@sknlaw.com
2 South Biscayne Boulevard
Suite 1600
Miami, Florida 33131
Tel.: (305) 614-1400
Fax: (305) 614-1425

1301 Avenue of the Americas
Suite 1700
New York, NY 10019
(212) 326-2000
mrobertson@omm.com

Kelly S. Wood
610 Newport Center Drive
Newport Beach, CA 92660
(949) 823-6900
kwood@omm.com

Jason Zarrow
O'Melveny & Myers LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
(213) 430-6000
jzarrow@omm.com

*Counsel for Appellee American Airlines, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Eleventh Circuit Rule 27-1(a)(10), I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains 4,557 words.  This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared using Microsoft Word in proportionally spaced, Times New Roman, 14-point font.

*/s/ Mark W. Robertson*

Mark W. Robertson

*Counsel for Defendant-Appellee*
*American Airlines, Inc.*

21

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 27, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Plaintiff-Appellant Lawrence M. Meadows by U.S. mail to 1900 Sunset Harbour Drive, #2112, Miami Beach, FL 33139.

*/s/ Mark W. Robertson*

Mark W. Robertson

*Counsel for Defendant-Appellee*
*American Airlines, Inc.*

22

# EXHIBIT 1

# EXHIBIT DX20
# for Shiffrin Declaration

**1**



Defendant Exhibit
Exhibit No.: **20**
Name: **Meadows, L.**
Date: **1/13/2026**
ⒺESQUIRE

**From:** "Hairston, Charles R." <chairston@alliedpilots.org>
**Sent:** Mon, 20 Jan 2014 15:16:30 +0000 (GMT)
**To:** "Meadows, Lawrence M." <lawrencemeadows@yahoo.com>; "Copeland, Thomas J."<copelandthomas@hotmail.com>; "Rivera, Ivan - Sec" <ivanmad@aol.com>
**Subject:** RE: POC, Grievance Hearing Date, BOD Meeting

Larry –

APA will be taking no further action to support Grievance No. 12-011, which is closed and has no value associated with it at this point.

Charles R. Hairston
Attorney / Election Administrator
Allied Pilots Association
14600 Trinity Boulevard
Suite 500
Fort Worth, Texas 76155-2512
Telephone: (817) 302-2178
Facsimile: (817) 302-2187
THIS E-MAIL MAY CONTAIN CONFIDENTIAL OR PRIVILEGED INFORMATION. IF YOU BELIEVE YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.

---

**From:** Lawrence Meadows [mailto:lawrencemeadows@yahoo.com]
**Sent:** Friday, January 17, 2014 5:33 PM
**To:** Hairston, Charles R.; Copeland, Thomas J.; Rivera, Ivan - Sec
**Subject:** Re: POC, Grievance Hearing Date, BOD Meeting

Chuck,

I understand that 12-011 is closed, but I still have legal remedies that flow from it. Therefore, I want to ensure that to the extent APA's originally filed POC preserved that grievance and the actions which flow from it; that if APA does in fact amend its POC by the 24th, that my grievance #12-011 remains included in it to protect my ability to pursue any other legal remedies associated with it.

Additionally, I will have to respectfully disagree with APA's position in regards to my status, because I believe I am still a member of the bargaining unit and owed a duty. Hence, the reason why I filed #13-064 for abrogation of my seniority and termination in violation of Sec.13 of the CBA. If as you contend that I have no rights under the CBA, then why is it that the company has agreed to hear my current my grievance; which is only a right to which members of the bargaining unit are entitled to under the CBA. Thus, I dispute APA's ignoring its duty to me.

As to the hearing I want to be clear that I could attend on Jan 16th due to a personal issue, and that I did not elect not to proceed, but simply requested to reschedule it. To be clear I do want my grievance heard, and exercise my right to attend and be represented by a pilot of my choice at the hearing.

Thanks,
Larry

On Friday, January 17, 2014 2:56 PM, "Hairston, Charles R." <chairston@alliedpilots.org> wrote:
Larry –

As you know, Grievance No. 12-011 was not advanced to the System Board and has been closed. Your most recent grievance, No. 13-064, is pending appeal hearing. You are free to pursue whatever remedies you wish during that hearing. As we have discussed, APA does not represent you since you are no longer a member of the bargaining unit.

Case 1:17-cv-22589-EA   Document 238-3   Entered on FLSD Docket 04/01/2026   Page 81 of
USCA11 Case: 25-10297    Document: 49324   Date Filed: 04/27/2026    Page: 27 of 27

**2**

As far as scheduling, you elected not to proceed with the hearing on the previously scheduled date of January 16, 2013. It is my understanding that Tom and Ivan are waiting for schedules to come out on the 18th to see whether February is workable from their end.  We will let you know what the schedule looks like.

Charles R. Hairston
Attorney / Election Administrator
Allied Pilots Association
14600 Trinity Boulevard
Suite 500
Fort Worth, Texas 76155-2512
Telephone: (817) 302-2178
Facsimile: (817) 302-2187
THIS E-MAIL MAY CONTAIN CONFIDENTIAL OR PRIVILEGED INFORMATION.  IF YOU BELIEVE YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.

---

**From:** Lawrence Meadows [mailto:lawrencemeadows@yahoo.com]
**Sent:** Friday, January 17, 2014 3:27 PM
**To:** Hairston, Charles R.; Copeland, Thomas J.; Rivera, Ivan - Sec
**Subject:** POC, Grievance Hearing Date, BOD Meeting

Hello Chuck,

I just wanted to follow-up with you on a few items;

1.  It is my understanding that the SDNY issued an order that all claims arising under the rejection of executory contracts (CBA) must be filed by Jan 24th, and that APA is amending/updating its umbrella Proof of Claim. I just want to be sure that my legal remedies under my previously preserved grievance #12-011  continue to be preserved, and  that the contractual and legal remedies under my pending grievance #13-064 are also fully preserved. Please let me know what action APA is taking related to preservation all of my grievance claims against AA related to my termination and removal form the seniority list, which arose under the CBA pre-commencement.

2.  Any word on scheduling for my grievance? I understand Feb. is bad for Thomas, but just want to let you know that I can be available anytime in Feb.or March, and would like to re-schedule at the earliest date possible that works for everyone involved.

3.  Finally, I saw brief blurb in the APA news digest that yesterday Bennett had briefed the BOD on the LTD 5 year rule, and the possibility of an extension or reinstatement to the seniority list. Could you elaborate more on that matter, and let me know what it means as it relates to me and my current grievance.

Thanks,
Larry